**STATE OF HAWAII**, Plaintiff–Appellee, v. **JOVENAL RULONA**, Defendant–Appellant

NO. 13427

(CR. NO. 88–0396)

JANUARY 9, 1990

LUM, C.J., PADGETT, HAYASHI, AND
WAKATSUKI, JJ., AND RETIRED JUSTICE
NAKAMURA, ASSIGNED BY REASON
OF VACANCY

## OPINION OF THE COURT BY PADGETT, J.

This is an appeal from a conviction for two counts of sexual assault in the first degree in violation of HRS § 707–730(1)(b) and two counts of sexual assault in the third degree in violation of HRS § 707–732(1)(b).

Defendant–Appellant Jovenal Rulona (appellant) has argued that he should not be convicted under Count II of the indictment for first degree sexual assault (HRS § 707–730(1)(b)) because there is no allegation, nor any proof of penetration of the alleged victim's vagina by his tongue. In support of this, appellant points to the fact that first degree sexual assault, against a person under 14 years of age, requires sexual penetration, while third degree sexual assault, of such a person, merely requires sexual contact. However, appellant's argument is not well taken. Sexual penetration is defined, among other things, in HRS § 707–700 as including cunnilingus. Cunnilingus is not defined in the penal code. The word is derived from the Latin word "cunnus" meaning the vulva and the Latin verb "linctus" the act of licking, and thus is defined as the stimulation of the vulva, or clitoris, with the lips or tongue. *See Webster's New International Dictionary* (3d ed. 1976).

It may seem anomalous that touching the vulva with the penis, without physical penetration, would apparently constitute sexual contact and, hence, in the case of a child under 14, would constitute third degree sexual assault, while touching the same spot with the tongue, without physical penetration, would nevertheless constitute sexual penetration for the purposes of the penal code, and thus

be sexual assault in the first degree. Nevertheless, it is the legislature's prerogative to act anomalously, if it wishes. The language of the statute is clear and appellant's point as to Count II is not well taken.

Appellant complains that after voir dire had been completed, but before anything else in the case had happened, his counsel discovered information which might indicate a connection between one of the jurors and the Sexual Abuse Center, whose employees played a large part in the trial. He asked the court to permit him to reopen the voir dire with respect to the particular juror to ascertain the facts. The State commendably did not object thereto. Nevertheless the trial judge refused such reopening.

It has often been said that it is important not only that trials be fair, but that they give the appearance of fairness as well. The trial judge should have exercised his discretion, in the peculiar circumstances of this case, in favor of allowing the reopening of the voir dire, but we do not base our reversal of the judgment below on this ground. Presumably, it will not happen again.

There were, however, three errors committed by the court below, in the course of the trial, which require a reversal and a remand for a new trial.

First, the alleged victim, who was eight years old at the time of the trial, was allowed to give her testimony before the jury sitting on the lap of a sexual abuse counselor.

HRS § 621–28 provides as follows:

> **Accompaniment of children at judicial proceedings.** A child less than fourteen years of age, involved in a judicial proceeding, including a grand jury proceeding, shall have the right to be accompanied by a parent, a victim/witness counselor, or other adult designated by the court. The accompanying person may be placed side by side with the child at the discretion of the presiding judge or court officer; provided that this position does not interfere with the proceedings of the court. The

accompanying person shall not communicate in any manner with the child unless directed by the presiding judge or court officer.

Appellant urges us that permitting a child witness to have an accompanying person placed side by side with the child during testimony, as the statute expressly provides, is as far as the trial court could go, and that permitting the child to testify, seated on the lap of a counselor, overstepped the statutory permission, and was error.

In this case, however, we do not reach the question of whether there might be circumstances in which a court could permit a child witness to testify sitting in the lap of an accompanying person. Even if we assume that the court had the discretion to do so, there is nothing in the minor witness' testimony, either before the court made its preliminary ruling, or after she took the stand before the jury, which shows a compelling necessity for allowing such a prejudicial scenario. On the contrary, the record shows that the child apparently testified before the grand jury without needing to be seated on the lap of a sexual abuse counselor. Her testimony in sum was that she was frightened to be there as a witness, and would feel better if she sat on the sexual abuse counselor's lap. Most witnesses appearing in trial for the first time, even adults, are frightened, but there was no indication that she could not testify without being seated in the counselor's lap.

We note that the last sentence of HRS § 621–28 provides "[t]he accompanying person shall not communicate in any manner with the child unless directed by the presiding judge or court officer." Communication is not always verbal, and the procedure followed here was fraught with opportunity for a violation of that sentence.

If the court below had discretion to permit the complaining witness to sit in the lap of a sexual abuse counselor, the exercise of that discretion in this case, on the record, was abused, and the court below erred in permitting the procedure.

The second error of the court below concerns the refusal to permit the defense witness, Clara Ochobillo, to testify as to her recollection of a conversation between her daughter Marlyn and Detective Antenorcruz. Marlyn had been called as a prosecution witness, but her testimony substantially contradicted that of the complaining witness. The prosecution then called Detective Antenorcruz to testify as to a statement which Marlyn had given him, in the presence of her mother, which, as he recalled it, was inconsistent with her testimony.

Antenorcruz's testimony as to what Marlyn had said to him presumably was admitted under Hawaii Rules of Evidence (HRE) 613(b), as a prior inconsistent statement by Marlyn. The question then, of whether or not Marlyn had made the statements attributed to her by Detective Antenorcruz, was directly in issue, and the defense had every right to put on a witness to testify to what she had heard said by Marlyn in that conversation.

Here we have a situation in which the court freely allowed the introduction of prior consistent statements by the complaining witness, allowed the introduction of alleged prior inconsistent statements of the witness Marlyn, but refused to allow the defense to show, by a witness, that Marlyn did not make the statements attributed to her by Detective Antenorcruz. The ruling of the court below on this point is inexplicable, unjustifiable, and erroneous.

The third error of the court below occurred during the long cross–examination of the defense witness Clara Ochobillo. The prosecutrix was permitted, over objection, to conduct a lengthy cross–examination as to an alleged conversation between herself and the witness. An example is the following:

Q. Okay. And do you remember indicating to me that it was a difficult situation —

A. What's that?

Q. Isn't it true you did indicate to me that it was a difficult situation, that it was hard?

A. I can't remember.

By asking the questions in this form, the prosecutrix put before the jury her version of what was said in that conversation.

Disciplinary Rule (DR) 7–106(C)(3) provides:

> (C)   In appearing in his professional capacity before a tribunal, a lawyer shall not:
>
> . . . .
>
> (3)   Assert his personal knowledge of the facts in issue, except when testifying as a witness.

The form of questions used by the prosecutrix, in examining Clara Ochobillo as to the conversation which had taken place between them, made those questions an assertion of the prosecutrix's personal knowledge of the facts in issue with respect to that conversation.

As is stated in Ethical Consideration (EC) 7–13:

> The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict.

Over 50 years ago in ***Berger v. United States***, 295 U.S. 78, 55 S. Ct. 629, 79 L. Ed. 1314 (1935), the Supreme Court of the United States, faced with a claim of error resulting from a similar line of questioning, stated:

> That the United States prosecuting attorney over-stepped the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense is clearly shown by the record. He was guilty of . . . suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered.

295 U.S. at 84, 55 S. Ct. at 631, 79 L. Ed. at 1319.

The Supreme Court went on to state in that case:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest,

therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor — indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

It was error for the court below to refuse to stop the prejudicial line of examination concerning the out–of–court conversation between the prosecutrix and the witness Clara Ochobillo.

Because of the errors below, the appellant simply did not receive a fair trial, and the judgment entered must be reversed and a new trial held. Reversed and remanded.

*Judd R. Scott*, Deputy Public Defender, for appellant.

*Alexa D.M. Fujise*, Deputy Prosecuting Attorney, for appellee.